IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BILLY R. CARTER, | ) | No. C 09-5276 LHK (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | ) | |
| | ) | |
| ED FOULK, et al., | ) | (Docket No. 25.) |
| | ) | |
| Defendants. | ) | |

Plaintiff, a civilly committed patient proceeding pro se, filed an amended civil rights complaint ("AC") pursuant to 42 U.S.C. § 1983 against officials at Napa State Hospital ("NSH"). In his AC, Plaintiff alleges that Defendants violated his right to due process under the Fourteenth Amendment. Defendants have moved for summary judgment. Plaintiff has filed an opposition, and Defendants have filed a reply. In response, Plaintiff has filed an opposition to Defendants' reply.[1] Having carefully considered the papers submitted, the Court hereby GRANTS Defendants' motion for summary judgment, for the reasons set out below.

**THE PARTIES**

Plaintiff was committed to Napa State Hospital ("NSH") pursuant to California Penal

---

[1] On July 16, 2012, the Court offered Plaintiff the opportunity to file a supplemental opposition, in light of *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012). Plaintiff has not filed a supplemental opposition.

Order Granting Defendants' Motion For Summary Judgment
G:\PRO-SE\SJ.LHK\CR.09\Carter276msj.wpd

1  Code § 1026. (MSJ, Ex. A.) On April 15, 2010, Plaintiff was ordered released from NSH into
2  the custody of the California Forensic Conditional Release Program ("CONREP"). (MSJ, Ex.
3  A.)
4        Defendant Ed Foulk is a former Executive Director of Napa State Hospital ("NSH").
5  From February 24, 2010 through February 3, 2011, Defendant Dolly Matteucci was the Acting
6  Executive Director of NSH. (Decl. Matteucci at ¶ 2.) Since February 3, 2011, Defendant
7  Matteucci has been the Executive Director of NSH. (*Id.*)

## STANDARD OF REVIEW

9        Summary judgment is proper where the pleadings, discovery and affidavits demonstrate
10  that there is "no genuine issue as to any material fact and that the moving party is entitled to
11  judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect
12  the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute
13  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a
14  verdict for the nonmoving party. *Id.*

15        Summary judgment is proper if the pleadings, the discovery and disclosure materials on
16  file, and any affidavits show that there is no genuine issue as to any material fact and that the
17  movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party
18  bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*
19  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to
20  disprove matters on which the non-moving party will have the burden of proof at trial. The
21  moving party need only demonstrate to the Court that there is an absence of evidence to support
22  the non-moving party's case. *Id.* at 325.

23        Once the moving party meets its initial burden, the nonmoving party must go beyond the
24  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
25  genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over
26  material facts, and "factual disputes that are irrelevant or unnecessary will not be counted."
27  *Liberty Lobby, Inc.*, 477 U.S. at 248. It is not the task of the Court to scour the record in search
28  of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The

nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Soremukun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

**ANALYSIS**

Plaintiff makes four general allegations regarding the violation of his constitutional rights. First, Plaintiff alleges that Defendant Foulk made oppressive rules that are worse than prison rules, deprived patients of everything enjoyable, educational and worthwhile, including funds for personal hygiene items, communication materials, etc. (AC at ¶ 4.) Plaintiff also claims that Defendant Foulk deprived Plaintiff of his computer by sending lies to the Office of Administrative Law. (*Id.*) It is alleged that Defendant Matteucci continued Defendant Foulk's unconstitutional behavior listed above. (*Id.* at ¶ 5.)

Second, Plaintiff states that all Defendants were told about the unsanitary and disease ridden outhouses located at NSH, and they knew that there was no running water on hospital grounds for patients to wash their hands. (*Id.* at ¶ 7.) Further, there were not enough outhouses, they were not emptied or clean enough, and they were almost always filled with human waste. (*Id.*)

Third, Plaintiff claims that all Defendants supported an unwritten policy that patients in the custody of the CONREP outpatient program must take mind-altering psychiatric drugs that can and have caused many deadly physical conditions, including diabetes and death, whether or

1  not they needed the drugs. (*Id.*)

2  Finally, Plaintiff argues that all Defendants supported a policy of keeping detainees
3  locked inside the buildings they call wards for extended periods of time. (*Id.* at ¶ 8.) Detainees
4  can only be in the yard for a few minutes each day. (*Id.*)

5  Defendants assert that they are entitled to judgment as a matter of law, and that they are
6  entitled to qualified immunity. The defense of qualified immunity protects "government
7  officials . . . from liability for civil damages insofar as their conduct does not violate clearly
8  established statutory or constitutional rights of which a reasonable person would have known."
9  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A Court considering a claim of qualified
10 immunity must determine: (1) whether the Plaintiff has alleged the deprivation of an actual
11 constitutional right, and (2) whether such right was clearly established such that it would be clear
12 to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson*
13 *v. Callahan*, 129 S.Ct. 808, 818 (2009). The Court may exercise its discretion in deciding which
14 prong to address first, in light of the particular circumstances of each case. *Id.* Granting
15 summary judgment on the ground of qualified immunity is "improper if, under the plaintiff's
16 version of the facts, and in light of the clearly established law, a reasonable officer could not
17 have believed his conduct was lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir.
18 2000).

19 Persons who have been involuntarily committed are entitled under substantive due
20 process "to more considerate treatment and conditions of confinement than criminals whose
21 conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22
22 (1982). "As civil detainees retain greater liberty protections than individuals detained under
23 criminal process, *see id.* at 321-24, and pre-adjudication detainees retain greater liberty
24 protections than convicted ones, *see Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979), it stands to
25 reason that an individual detained awaiting civil commitment proceedings is entitled to
26 protections at least as great as those afforded to a civilly committed individual and at least as
27 great as those afforded to an individual accused but not convicted of a crime." *Jones v. Blanas*,
28 393 F.3d 918, 932 (9th Cir. 2004).

In *Youngberg*, the Court considered the rights of a mentally retarded man who was involuntarily committed to a state institution by his mother. The Court held that the patient had a constitutionally protected liberty interest in reasonably safe conditions of confinement, freedom from bodily restraints, and such minimally adequate training reasonably required by these interests. A procedurally proper civil commitment did not extinguish all substantive liberty interests under the Fourteenth Amendment. 457 U.S. at 315. The state conceded that the patient had "a right to adequate food, shelter, clothing, and medical care" and the Court's task was to decide "whether liberty interests also exist in safety, freedom of movement, and training." *Id.* The Court easily found liberty interests in safety and freedom of movement, but found "more troubling" the claim of a liberty interest in habilitation, i.e., the training and development of needed skills. *Id.* at 316-17. The Court concluded that the patient had a protected interest in the habilitation necessary to ensure the constitutionally protected interests in safety and freedom from restraint. *Id.* at 319. Having found the existence of a liberty interest, the Court then determined that it was necessary to balance the liberty of the individual and the demands of an organized society to decide whether there had been a due process violation. *See id.* at 320. In the context of the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraint, the Constitution only requires that the courts make certain that professional judgment in fact was exercised. *Id.* at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.* at 323.

The Ninth Circuit has held that the professional judgment test requires a "finding of conscious indifference amounting to gross negligence" by the professional in order to impose liability. *Estate of Conners by Meredith v. O'Connor*, 846 F.2d 1205, 1208 (9th Cir. 1988). This standard differs from the "deliberate indifference" showing required to establish an Eighth Amendment violation because it does not require a showing of subjective awareness of the risk of harm to the patient. *Neely v. Feinstein*, 50 F.3d 1502, 1507 (9th Cir. 1995); *see also Oregon*

*Advocacy Center v. Mink*, 322 F.3d 1101, 1120-21 (9th Cir. 2003) (rejecting argument that deliberate indifference is the degree of fault that must be established for a violation of the due process rights of a mentally incapacitated criminal defendant awaiting trial). *Cf. L.W. v. Grubbs*, 92 F.3d 894, 897 (9th Cir. 1996) (disapproving *Neely*'s broad statements that gross negligence can give rise to liability for substantive due process violations, but acknowledging that the gross negligence standard may be appropriate in the limited context of the claims of inmate-plaintiffs injured because of a miscarriage of the professional judgment of a hospital official in the context of a captive plaintiff).

### 1. Deprivation of computer

As an initial matter, Plaintiff generally alleges that Defendants created oppressive rules and a deprivation of "everything enjoyable," including personal property items. However, Plaintiff does not allege that Defendants deprived him of any of these items in particular except for his computer. Nonetheless, the evidence shows that NSH provides an "allowable list" of personal items. (Decl. Matteucci at ¶ 14.) Educational materials and hygiene items purchased by patients must meet the requirements on the allowable list. (*Id.*) Plaintiff does not confirm or deny that he had any items taken away from him, or that those items purportedly taken away from him were on the allowable list. Thus, there is an absence of evidence that Defendants demonstrated a conscious indifference, or a substantial departure from accepted professional judgment to prohibit these hypothetical items.

Plaintiff also claims that there is no valid reason to prohibit patients from possessing computers. He asserts that Defendants presented arguments to the Office of Administrative Law in an attempt to influence a change in the law to prohibit possession of personal computers by patients such as him. The Department of Mental Health's policies, and California State Regulations state that non-LPS[2] patients, including Plaintiff, are not permitted to have access to

---

[2] "LPS" patients are patients in the custody of the DMH pursuant to the Lanterman-Petris-Short Act, Cal. Welf. & Inst.Code §§ 5000-5599, "a comprehensive civil commitment scheme designed to address a variety of circumstances in which a member of the general population may need to be evaluated or treated for different lengths of time." *In re Howard N.*, 35 Cal.4th 117, 135 n.6 (2005) (internal quotation marks omitted).

1  the internet for safety and security purposes. (Decl. Matteucci at ¶ 5.) Thus, in 2010, NSH
2  banned devices that were capable of connecting to a wired or wireless communications network,
3  or could be modified for network communications, in order to comply with the state mandate.
4  (*Id.*)

5        Plaintiff presents no evidence to support his conclusory statement that he was deprived of
6  his right to due process when Defendants prohibited him from possessing a personal computer.
7  At least two other courts have recognized that prohibiting a civil detainee from owning a
8  personal computer was reasonably related to an institution's interest in security, and thus, did not
9  violate due process. *Endsley v. Luna*, 2009 WL 3806266, at *9-10 (C.D. Cal. Nov. 12, 2009);
10 *Spicer v. Richards*, 2008 WL 540182, at *7-8 (W.D. Wash. Aug. 11, 2008). Further, Plaintiff
11 has not proffered any evidence sufficient to overcome the presumption of correctness to which
12 Defendants are entitled regarding their decision to prohibit computers. *See Youngberg*, 457 U.S.
13 at 324-25.

14       Even assuming that Plaintiff's constitutional right was violated, the undisputed evidence
15 demonstrates that a reasonable officer would not have known that prohibiting Plaintiff from
16 possessing his personal computer, in compliance with state law, was unlawful. Plaintiff's
17 allegation that the deprivation of his computer resulted from Defendants' malicious intent is not
18 sufficient to defeat Defendants' motion because Plaintiff's assertion is unsupported by any
19 evidence in the record. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Thus,
20 Defendants have demonstrated that there is an absence of evidence showing the existence of a
21 genuine issue of a fact, and they are entitled to summary judgment on this claim.

22       2.      <u>Outhouses</u>

23       Plaintiff asserts that "a few years ago," the outhouses were overflowing with feces and
24 urine for days and weeks at a time before any sewage truck would come to NSH and pump out
25 the excrement. (Opp. at 3.) Plaintiff further adds that the "toilets are not an issue now" because
26 the "patients are no longer allowed to have grounds cards." (*Id.*) In addition, Plaintiff states that
27 he and other patients complained about the toilets "to more than one place a few years ago."
28 (*Id.*)

Defendants state that there currently are three portable toilets inside the NSH Security Treatment Area. (Decl. Matteucci at ¶ 10.) Depending on a patient's security level and level of grounds access, he can use these toilets. (*Id.*) NSH uses maintenance companies by contract to empty and service these toilets weekly. (*Id.*) Defendants are aware of no complaint by Plaintiff as to the cleanliness or availability of the toilets. (*Id.* at ¶ 11.)

Viewing the facts in the light most favorable to Plaintiff, there is an absence of evidence that Defendants were aware of the lack of cleanliness of the toilets in the past. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (noting that a supervisor "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). At most, Plaintiff asserts that he and several other patients complained about the toilets to unspecified "places" a few years ago. Without evidence that Defendants had knowledge of such a problem, the evidence falls far short of demonstrating "conscious indifference amounting to gross negligence" by Defendants in order to impose liability. *See Estate of Conners by Meredith*, 846 F.2d at 1208. Moreover, Plaintiff has not shown that the Defendants have substantially departed from accepted professional judgment, or that it would be clear to a reasonable officer that his conduct was unlawful in this situation. Thus, Defendants are entitled to summary judgment on this claim.

3.   Forced medication

The Supreme Court has recognized a liberty interest in freedom from unwanted antipsychotic drugs. *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). For those inmates convicted of, or awaiting trial, for example, the "liberty interest in avoiding unwanted medication must be defined in the context of the inmate's confinement." *United States v. Loughner*, 672 F.3d 731, 745 (9th Cir. 2012) (quoting *Harper*, 494 U.S. at 222). To comport with due process, the government must show both the need for, and medical appropriateness of, antipsychotic medication. *Riggins v. Nevada*, 504 U.S. 127, 135 (1992). However, Plaintiff is neither a convicted inmate nor a pretrial detainee. Thus, it is not clearly established that the above laws apply to a patient, civilly committed because of mental infirmities. *See Hydrick v. Hunter*, 500 F.3d 978, 990 (9th Cir. 2007), overruled on other grounds by *Hunter v. Hydrick*, 129

1  S. Ct. 2431 (2009). At least one court has concluded that the standards discussed in *Harper*
2  strike the appropriate balance for civilly committed patients, such as Plaintiff. *See Jurasek v.*
3  *Utah State Hosp.*, 158 F.3d 506, 511 (10th Cir. 1998). Specifically, the Court held that "the Due
4  Process Clause allows a state hospital to forcibly medicate a mentally ill patient who has been
5  found incompetent to make medical decisions if the patient is dangerous to himself or others and
6  the treatment is in the patient's medical interests." *Id.*

7  Nonetheless, Plaintiff faces a bigger obstacle because he does not assert that he was
8  actually forced to take "mind-altering drugs." He presents no evidence that he was given
9  involuntary medication, or that he has complained of any involuntary medication or injury
10 resulting from such medication. (Decl. Matteucci at ¶ 9.) Without an allegation that Plaintiff
11 himself suffered a concrete, particularized injury from the involuntary medication, or that there
12 is a causal connection between an alleged injury and the conduct complained of, Plaintiff has no
13 standing to litigate this claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).
14 The absence of standing requires dismissal of this claim. *See Whitmore v. Federal Election*
15 *Comm'n*, 68 F.3d 1212, 1215 (9th Cir. 1995).

16 In addition, even if Plaintiff had standing to assert such a claim, he alleges no facts that
17 Defendants were personally involved in the deprivation of a federally protected right, *see Leer*,
18 844 F.2d at 634, nor does he allege a sufficient causal connection between the Defendants'
19 conduct and the constitutional violation, *see Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th
20 Cir. 2012). Moreover, Plaintiff must present evidence that Defendants not only knew about the
21 constitutional violation, but also that Defendants created a specific policy or caused a specific
22 event that led to the constitutional violation. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir.
23 2012). Plaintiff has not done so. Thus, Defendants are entitled to judgment as a matter of law
24 on this claim.

25       4.      <u>Outdoor time</u>

26 Plaintiff generally alleges that patients are kept indoors for extended periods of time, with
27 little to no outdoor or yard time. Specifically, Plaintiff claims that patients on the violent or
28 locked units do not get "fresh air" breaks all day, and only receive a few minutes in the walled-in

courtyards when there is sufficient staff on duty. (Opp. at 3.) Defendants state that NSH policy provides daily fresh air breaks for individuals in each program at NSH. (Decl. Matteucci at ¶ 12.) Patients have between 7 and 10 fresh air breaks every day in the courtyard between 7:00 a.m. and 9:45 p.m. for a minimum of 15 minutes each. (*Id.*) NSH has a policy of providing the least restrictive therapeutic environment for patients and all programs, while maintaining the safety and security of the facility. (*Id.* at ¶ 12.) The program restrictions are consistent with each patient's treatment plan and individual progress toward discharge, and the safety and security of the facility. (*Id.* at ¶ 13.)

The Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objectives. *See Pierce v. County of Orange*, 526 F.3d 1190, 1211-12 (9th Cir. 2008). Although the Ninth Circuit did not specify the "minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells," the Court held that ninety minutes per week of exercise, which is the equivalent of less than thirteen minutes per day, does not comport with Eighth Amendment standards. *Id.* at 1212. The *Pierce* court eventually concluded that if detainees spent 22 hours per day in their cells, that they then be provided with at least two hours of exercise per week. *Id.* at 1213.

Defendants have presented evidence that, in general, patients receive over two hours per day of permissible outdoor time. Further, Defendants assert that the restrictions for outdoor exercise are dependent on each patient's treatment plan, and balanced with the safety and security of the facility. In contrast, again, Plaintiff has not asserted that he has been unreasonably restricted from outdoor time, that he has been kept indoors for extended periods of time, how long those periods of time have lasted, or any other specific facts to support his claim.

At a minimum, it is clear that Defendants are entitled to the presumption that they exercised professional judgment. *Youngberg*, 457 U.S. at 321-23. Plaintiff has not provided any evidence to the contrary. In addition, there is no clearly established law regarding the minimally constitutional amount of time that insanity acquittees or civilly committed patients are entitled to outdoor exercise. Even assuming that Defendants violated Plaintiff's right to outdoor exercise,

there is no evidence to support an inference that a reasonable officer would have known that his conduct was unlawful.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Judgment shall be entered in favor of Defendants.[3] The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: 9/10/12

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

[3] Defendant Susan Kessler has not appeared in this action because service was not executed. (Docket No. 19.) However, because Plaintiff's claims against Defendant Kessler places her in the same or similar position to the answering Defendants, summary judgment is also granted as to Defendant Kessler. *See Columbia Steel Fabricators v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant).